Thank you, Your Honor. Burton McCullough for Ben-Tao. I believe that our briefs cover very well the points that we have raised here. I would just emphasize one thing. Citibank's position is bottomed on cases in which customers of a bank made a deposit into an account, generally we would consider those what we call demand deposit accounts, like a checking account or a savings account. And then all of a sudden the foreign branch of the bank in which the deposit is made is closed down because of civil war, strife, whatever it is, and they say that the statute of limitations for demanding the money starts to run down because it would be futile to wait. That is not our case. We have what is called a certificate of deposit, which is different, a different kind of deposit than what those cases are bottomed on. And this certificate of deposit is represented by certain bank notes which have terms and conditions themselves. They expressly provide that the deposit can be called upon at any place in the world at any time. And under these conditions, the statute of limitations, whichever statute is going to apply, is not going to begin to run until the demand is made. These are basic banking principles that have been in effect for hundreds of years probably. How do we know that? that money in a written form that has its own terms and conditions, that the statute is not going to start to run until there is a demand made. See, if we wrote that on an opinion, there has always been a banking principle, that would necessarily be followed by a citation to some kind of binding or convincing authority. And what would the citation be that you would tag on to that sentence were we to write an opinion saying that? I would cite the Uniform Commercial Code because I think that's the law that pertains here. Also, we're talking about the terms and conditions that are actually written on the face of the instruments themselves. And there's the Garcia case, which is very similar to our case, where the deposit had been made in Cuba before the enactment of the Uniform Commercial Code. And then, of course, the case arose subsequent to that and the court relied upon the Uniform Commercial Code. The idea here is that if you put money into a checking account, you anticipate that you're going to be making withdrawals on a regular basis. If you make a deposit with a bank and you obtain a certificate of deposit in which the bank promises to return this money, it is anticipated that that kind of an instrument could be held for years without a demand ever being made to get your money back. In this particular case, for example, when the deposit was made of $100 million, that was not a gift to the bank. And there was no anticipation that it was going to be removed any time soon, particularly given the circumstances that existed at the time. But even today, if we go to the bank and we purchase a certificate of deposit, there is no expectation that there's going to be a demand to withdraw that money any time soon, necessarily. Well, most certificates of deposit today expire to 1, 2, 3, 5, 10 years. And yours was not. Is that what you're telling us? That's right. It depends upon the terms and conditions that are attached to or written on the certificate of deposit. Most banks will put a time limit on there because they're going to pay different rates of interest for the different times of period that they're on deposit. In this particular case, the instruments themselves on the face say that presentment and demand can be made any place in the world, where I guess Citibank has a branch, and at any time. They're good for all time. So I think we have to take the certificates at face value, if you will, as to what the terms and conditions are. We obviously think that the case should not even be here, that there was an improper removal, but I'd like to reserve the balance of my time for responding to Citibank's arguments other than to answer any questions the court might have. Any questions by us? There being none, we'll hear from the other side. Thank you, counsel. Good morning. My name is Tom Arthur. I'm representing the appellees in this case, Citibank and Computershare. There's a point I wanted to raise or address regarding the reply brief. One thing that the court will note in reading the reply brief is that there's really no reference in there regarding the choice of law issue that was front and center in this court's decision in the Hume case. And I think that's an important omission, because there's nothing addressing the argument that was raised in our brief that the choice of law analysis that this court used in Hume is exactly on point with the choice of law analysis that should be used in this case. Number one, was there a showing that the plaintiff's mere residence in California establishes a substantial interest in the state of California in having its law applied? And we referred to the Hume case where this court addressed that very issue and determined that mere place of residence is not sufficient to establish a substantial interest in California. The only other argument that plaintiff has here is that a demand was made in the state of California, which is somewhat suspect. That's the allegation. And this court also addressed that point in the Hume case, because there was a demand made in the Hume case in California because a complaint was filed in California. And this court in Hume determined that that was not sufficient to establish a substantial interest in the state of California in having the dispute decided. The other point that was not refuted in the reply brief is that the state that has a significant interest in the outcome of this case is New York, because that is where Citibank's headquarters are. That's essentially an undisputed issue in this case. So applying the Hume analysis to our case, it should come out the same way. California does not have a substantial interest in the outcome. New York does have a substantial interest in the outcome. This court should apply New York statute of limitations. In the Hume case, the court applied New York statute of limitations, which is six years, and determined that the claims were cut off by the New York statute of limitations. The same results should flow here. The New York statute of limitations for the claims that have been alleged in this case is six years. It's undisputed that these events go back to the 1930s. And the only point that the plaintiff seems to be raising is that they should have been able to make a demand, and that would by itself trigger the statute of limitations. That point itself was also addressed in the Hume case. Because this court determined in Hume that when a New York bank's branch in a foreign country is shut down, that event itself constitutes a default. That event itself starts the running of the statute of limitations. And the district court determined that the Shanghai branch of Citibank was shut down in the 1930s. And as a result of that, the statute of limitations started to run at that point. So you're saying even if he's right about what this is, as compared to the other instruments that we're talking about in other cases, nonetheless, when that bank shut down, that's when the statute started to run. Yes, correct. So we don't really care what this thing is, a certificate of deposit, promise to pay, whatever. That's exactly correct. Because the certificate of deposit, the label that's being hung on this instrument, is nothing other than an obligation, an alleged obligation on the part of the bank to pay money back. In Hume, the court was faced with the same question. What was the obligation of the bank? Was it a contractual obligation to pay money back? And this court determined in Hume that that statute began to run when the branch was closed, and the six-year statute of limitations cut off the claim. Same result should apply here. There's a reference in counsel's argument to the Garcia case. One point I'd like to make in response to that is that the Garcia case was addressed by a district court decision in the Southern District of New York called Tran versus Citibank. And this court, in the Hume opinion, referred to Tran and adopted the holding in Tran. The court in Tran noted that the Garcia case involved a special set of facts, which were not involved in the Tran case, and affirmed the rule in the Second District that the closure of the branch itself constitutes a default. And that's what starts the running of the statute of limitations. So this court in Hume said, if that's the way the matter is treated under New York law, if that's the way the courts deal with that issue under New York law, that's the way we're going to apply the law here in the Ninth Circuit and apply the statute of limitations to cut off the claim. So our point is fairly straightforward. This case is pretty much on force with Hume. A lot of the issues involved in our case were decided in the Hume case. It should be the same outcome here. The district court properly ruled that the claims are barred by the statute of limitations and appropriately dismissed the claims. If this court has any other questions, that's my recommendation.  None, thank you. All right. You may respond. Our case is not anything like the Hume case. First of all, there is no comparison between the closing of the branches of Citibank and Chase and so forth in Saigon when Saigon fell to the communists and the closing of the Shanghai branch of Citibank in China. In the materials that Citibank itself produced that they wanted the court to take judicial notice of, it's very explicitly stated in there that they saw the events occurring. They took action. This is Citibank. They took action to take care of their problems, and they moved assets and so forth to the branch in Hong Kong. And Citibank closed its own branch for its own reasons. It wasn't forced to be closed. In Saigon, the money that was deposited there, number one, wasn't U.S. dollars. It was whatever the currency was in Vietnam. And they couldn't go get that currency out of that bank there because of the civil strife that had taken place. That's not the case here with Citibank. Citibank got gold, issued a certificate of deposit to U.S. dollars, transferred its assets to Hong Kong as the affairs came to pass. So are you saying there was no repudiation by closure? That's right. In fact, in the materials that they provided, they said, we were calling loans and we were paying deposits. Well, they didn't pay this deposit. We know that because we still have possession of the original certificate of deposit. But it says it can be presented for payment at any branch anywhere in the world. So it seems to me that from a practical standpoint, General Wang and Citibank came to the perfect solution. We want to protect this money, so we're going to issue a certificate of deposit. Citibank can do whatever it wants with the money, and probably did and kept it and put it over into Hong Kong because there's no allegation that the communists or the Japanese, in both of those situations, confiscated Citibank's assets. No allegations of that. In fact, that isn't what happened. So Citibank kept that money, probably by transferring it to Hong Kong, issued its certificate of deposit and said, when peace prevails again or whether it does or it doesn't, present this certificate at any branch of Citibank and you can have your money. Those are the terms. In the Hume case, we don't have certificates of deposit. We don't have terms and conditions that are attached to it. We don't have a closure forced by the government or a confiscation of any of the assets of the bank that maybe took place in Saigon. We have an entirely different situation here. And we come back to the realistic situation here, and that is that nobody anticipates calling a certificate of deposit within a certain period of time. What were they going to do if they closed the branch in China and they say a statute of limitations starts to run them? If it had been limited to the Shanghai branch, that might have been a problem to go in there. First of all, there wouldn't have been a branch to go to. So they said, we're going to take care of that problem. Present your certificate any place. And you can do that today with Bank of America, Citibank. You get a certificate of deposit. You don't have to go to a particular branch. People are so mobile today. They move from New York to California. They take their certificates in. They get their money back. I think that we have to remember Citibank got the money. It wasn't a gift. They promised to pay the money back. They didn't specify a place. They didn't specify a time. And the closing of that branch had nothing to do with the running of the statute of limitations. The statute of limitations only began to run when a demand was made and then there was a refusal to pay. Yeah. I guess I keep looking at the idea that there was no repudiation. I'm sorry? There was no repudiation of any kind, by closure or otherwise. Right. If we read those materials, they're just anecdotal to begin with. But the materials that they presented, the bank itself was taking actions to protect itself and its customers. It was calling loans because they wanted their money paid back that they had loaned out. And they were paying deposits to their customers so that they could have their money and moving their assets to Hong Kong. If we were to agree with you, what are you asking us to do with your case? Number one, send it back on a remand because there's no jurisdiction before this court. Number two, if the court does have jurisdiction, then to reverse the dismissal of the case and let us go forward that it's not barred by the statute of limitations because the statute did not start to run until 2008 when a demand was made and they refused to pay. Whichever statute of limitation applies. I'm not so sure that the California statute doesn't apply. In fact, I think the California statute does apply. There's a tricky issue here. The statute says, the Huon case is saying maybe you have to apply the statute of another jurisdiction if this forum does not have a statute that bars the claim. Well, 348 of the CCP is a statute and read in conjunction with 361, it can bar a claim. So California actually does have a statute that could bar this claim. I think that the principle of where there is no statute that can bar the claim refers to an instance where you have a cause of action and there is no statute of limitations at all with respect to that claim. Then you might look to the other jurisdiction. But in this case, there is a statute which specifically is directed to deposits. That's 348. It says there is no statute of limitations barring it unless you go to 361 and it talks about if there is a statute in a foreign country that would apply, then it might be barred. So there is a statute in California that could apply. Therefore, we're not going to have to even look to New York. But if we look to New York, it's six years. But the question is, when did the statute start to run? Thank you, counsel. I do have a question. Maybe I've misrecollected this. Maybe I've read it incorrectly. But wasn't there something on the face of the bond that had some determination about the redemption? No, it's not a bond. I mean, the certificate of deposit. Whatever it was, the negotiable instrument. I thought there was something on the face of it. Am I incorrect on that? Talked about what? How it was to be redeemed or how it was to be viewed. And wasn't there some suggestion that the watermark might be different but the watermark had to be looked at in a little different way? Okay, I think what you're referring to is that some things you can't see with the naked eye. You have to look at with infrared lighting or something like that. When you look at the instrument, whether with the naked eye or under certain lighting conditions, there is writing on the instrument that tells us what it is. First of all, it is payable on demand. It is payable by Citibank. And it is payable anywhere in the world. There is nothing which limits it to a place or a time. In essence, it is a negotiable instrument. It meets the definition of a negotiable instrument under the UCC, under the Negotiable Instance Law, and under cases that started with Lord Mansfield 300 years ago. It is a promise, an unconditional promise, to pay a certain sum of money on demand. And so it's a negotiable instrument and by its very terms it specifies that it can be presented anywhere. So there's nothing on the instrument itself that would limit any kind of a presentation anywhere other than in a Citibank branch. Could counsel from Citibank address that issue, please? Since I raised it, I just... I'll be happy to. I think what the court may be recalling is the face of the 20, what counsel refers to as certificates of deposit, there is an English language on that and it says, the central bank of China shall pay. Yeah. And at its office here is the language. And the bottom of the document says Shanghai. So I think what the court may be recalling is the reference on the face of the document saying that it's the central bank of China, not Citibank, that promised to pay, number one. And number two, that it shall pay at its office here, the it referring to central bank of China and the here referring to Shanghai. If that's the court's question. That was it. Yeah, that relates to the bank of China but not to Citibank. Okay. Thank you, counsel. The case argued is order submitted. We'll do our best to sort it out as quickly as we can. Falcon Enterprises has been submitted on the briefs. We'll call the last case on the oral argument calendar.
judges: McNamee, Trott, Rymer